# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **JOHN J. STACK, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.  05 C 1230** |
| **vs.** | ) | |
| | ) | **Magistrate Judge Morton Denlow** |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

This case comes before this Court on the Plaintiff's motion for summary judgment or remand and the Defendant's motion for summary judgment.  Plaintiff, John J. Stack, Jr., ("Plaintiff" or "Claimant"), challenges the decision of Defendant Jo Anne Barnhart, Commissioner of Social Security ("Defendant" or "Commissioner"), claiming that her denial of his request for Social Security Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"), should be reversed or remanded because the ALJ failed to consider substantial medical evidence, committed error in determining Claimant's mental residual functional capacity, and erred in finding the Claimant not credible.  For the reasons stated below, this Court denies Plaintiff's motion for summary judgment or remand and grants the Commissioner's motion for summary judgment.

# I. BACKGROUND FACTS

## A.    PROCEDURAL HISTORY

Claimant filed an application for SSI on February 14, 2001, and for DIB on March 6, 2001, alleging a disability since February 5, 2001, due to right foot and leg pain.  R. 53-55. These applications were denied initially, R. 27-30, and again upon reconsideration.  R. 31, 34-37.  On July 17, 2002, Administrative Law Judge Gilbert A. Sheard ("ALJ"), held a hearing on the question of disability.  R. 238-267.  Claimant, who was represented by counsel, testified at the hearing.  R. 243-60.  Thomas Grzesik, a vocational expert, also testified.  R. 260-65.

On November 6, 2002, the ALJ issued his decision, R. 15-24, and determined that Claimant was not disabled because, though he had no transferable skills from any past relevant work, "he could be expected to make a vocational adjustment to work that exists in significant numbers in the economy." R. 23-24.  On January 7, 2005, the Appeals Council denied the Claimant's request for review.  R. 5-8.

The Claimant now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  The parties have consented to this Court's jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c)(1).  The Court conducted an oral argument on September 14, 2005.

**B. HEARING TESTIMONY – JULY 17, 2002**

**1. Claimant's Testimony**

Claimant was 54 years old at the date of the hearing. R. 18. He has a high school education and is a Vietnam veteran. R. 18, 201. His past work experience includes employment as a construction worker, parts driver, and cook. R. 18.

At the hearing, Claimant testified regarding his numerous mental and emotional problems, but did not testify as to his claimed physical limitations. Although Claimant alleged hypertension, headaches, foot pain, knee pain, and peptic ulcer disease, R. 19, he did not testify as to any of these conditions. Claimant also he did not testify regarding the injuries which precipitated his filing the application for DIB; in January of 2001 he sustained injury to his foot and ankle in a work accident when a wooden skid fell and struck his foot and legs. R. 119. Indeed, when the ALJ questioned him about his physical activities, he admitted that he was a "fairly good" bowler. R. 243. When asked why he was unable to work, he testified that he "mentally could not take the pressure." R. 245.[1]

The mental disabilities discussed were many. Claimant testified that he is an alcoholic (he quit drinking in August of 2001); suffers from depression, paranoid delusions, flashbacks, and insomnia; has problems concentrating because of his medications; and has posttraumatic stress and obsessive-compulsive disorders. R. 249-55. He testified that his paranoid

---

[1] The ALJ asked Claimant "what was the straw that broke the camel's back in November [of 2001] that made you [quit working]? Claimant responded: "I just couldn't take it no more. What was the straw that broke the camel's back? The work was too hard and the pay wasn't right." R. 245.

delusions often prevent him from going outside because he is afraid that "people are trying to get" him. R. 249. Also, due to his insomnia, he is only able to get three to five hours of sleep at night. R. 250. He has problems "getting along" with people and this has caused him to lose jobs in the past. R. 250-51. His problems with depression cause him to isolate himself two or three times a month when he will go into his room and stay there for two or three days at a time. When he is not isolating himself because of the depression, he leaves his house once every other day. R. 251.

Claimant's problems with concentration also prevent him from doing simple things like watching TV or writing a grocery list. R. 253. Due to these problems with concentration and his struggles with depression, he doesn't get dressed two or three times a week. *Id.* Instead, he spends at least two hours every day pacing throughout the house. R. 257. He also experiences vivid flashbacks during which he is "actually back in combat, and a fire fight, people shooting each other." R. 253. These flashbacks often occur in the afternoon and sometimes lead him into another bout of depression. R. 253, 258. His depression has gotten worse since he stopped drinking. R. 253.

Claimant also testified that he suffers from obsessive compulsive disorder. R. 255. This prompts him to re-wash dishes and clothes. He also complained that he suffers from severe migraine headaches at least three times a week. These headaches are probably caused by the metal in his head; he was hit with an 81 millimeter mortar shrapnel in a fire fight. R. 255-56. These headaches can last up to six hours. R. 256.

Claimant takes several medications to treat his disorders: Prozac, Busprone, and Risperdal.  R. 251.  He takes these medications twice every day and they make him drowsy.  R. 252.

### 2.    Thomas Grzesik – Vocational Expert ("VE")

Thomas Grzesik, a VE, testified at the hearing regarding existing jobs in the economy which might be suitable for Claimant.  R. 41, 260-65.  The ALJ asked the VE to consider a claimant who, with the same age, education, and background as Claimant, could perform work with the following limitations:

1.    no understanding, remembering, or carrying-out detailed, but not complex job instructions;

2.    the job must be routine and repetitive;

3.    independent work and not part of a close-knit work team;

4.    no direct public contact;

5.    no close and intense supervision (after learning job);

6.    not highly stressful;

7.    night shift work with few people around; and

8.    work-site secured from people walking in from the street.

R. 260, 114-15.

The VE testified that such a hypothetical claimant could work as an office cleaner.  R. 261.  There are approximately 6,500 of these jobs in the greater Chicago area.  *Id.*  However, if the hypothetical claimant suffered paranoia or other symptoms which prevented

him from attending work at least twice a month, he would not be able to sustain the job as an office cleaner. R. 263.

## C. MEDICAL EVIDENCE – MENTAL HEALTH TREATMENT

### 1. Hines VA Hospital - 1994 through 2001

Beginning in 1994, Claimant sought mental health treatment at the Hines VA Hospital ("Hines Hospital") located in Chicago, Illinois. R. 166-231. In 1994, Hines Hospital records indicate that Claimant was diagnosed with cocaine and alcohol dependence and prolonged posttraumatic stress disorder ("PTSD"). R. 183.

In 1999, Claimant was additionally diagnosed with major depression with psychotic features and dependent personality disorder. R. 170. The record from Hines Hospital also indicates that Claimant was transferred to Hines Hospital from Mt. Sinai Hospital. Claimant went to Mt. Sinai after he made a suicide attempt by slashing his wrists with a razor. At Mt. Sinai, he again tried to commit suicide by swallowing plastic ware. R. 170. He was treated at Hines Hospital for one week and then released. R. 170.

On February 28, 2001, Claimant was again admitted into Hines Hospital for alcohol dependence. R. 166. The records indicate that Claimant had been on a seven month alcoholic binge which consisted of Claimant drinking 8 to 10 quarts of alcohol per day. Claimant reported to the Hines Hospital staff that he drinks to self-medicate and forget, that he experiences daily flashbacks to war time and that he suffers from survivor's guilt. The records also indicate that Claimant suffers from severe depression. Claimant left Hines Hospital on March 2, 2001 against medical advice but continued drinking and returned on

March 5, 2001 because he was "interested in [alcohol] detoxification and rehabilitation." R. 169.

From March 5, 2001 until he left Hines Hospital on March 9, 2001, Claimant underwent detoxification for alcohol. R. 194-210. Claimant's psychiatric diagnosis as of March 9, 2001 included: on Axis I, alcohol dependence, alcohol withdrawal, PTSD, major depression with psychotic symptoms, and impulse control disorder; and on Axis II "cluster B traits." R. 195.

### 2. Dr. William N. Hilger, Jr., PhD. - Psychological Consultative Examination

On August 30, 2001, Dr. William N. Hilger, Jr. conducted a psychological consultative examination of Claimant. R. 142-147. Dr. Hilger reviewed documents sent to him by the Social Security office and also met with Claimant. R. 142. Dr. Hilger reported that Claimant continued to drink at least one 40-ounce bottle of beer a day, that he was not taking any of his medications (because of the side effects), and that "he was very evasive throughout the interview and certainly did not appear, in my opinion, to be seriously mentally or physically impaired." R. 143, 146. He diagnosed alcohol dependence, possible mild PTSD, a history of cocaine and heroine abuse, reportedly in remission, and ongoing nicotine dependence. R. 146. He concluded: "[Claimant] has, in my opinion, good mental potential if he were to stay away from alcohol and other drugs to perform work related activities involving understanding and memory, sustained concentration and persistence, social interaction, and adaptation." R. 147.

### 3.     Dr. Phyllis Brister, PhD - Non-Examining Consultative Review

Dr. Phyllis Brister, a state agency reviewer, reviewed Claimant's record and filled out a mental residual functional capacity assessment form on September 26, 2001. R. 148-65. Dr. Brister opined that Claimant's difficulties mostly appeared to stem from his problems with drugs and alcohol. R. 150. Dr. Bryster found that Claimant could perform simple, routine tasks with adequate persistence and pace; work involving brief, superficial, and infrequent social contacts; and work involving an ability to adapt to routine. R. 150.

## D.     MEDICAL EVIDENCE – PHYSICAL HEALTH

### 1.     Mercy Hospital - January 5, 2001 Hospital Visit

On January 5, 2001, Claimant was treated at Mercy Hospital and Medical Center in Chicago, Illinois for injuries to his right foot. R. 121. Claimant told doctors at Mercy that he was injured when a skid of material being picked up by a coworker accidentally fell on his right foot. The record indicates that there was no apparent swelling or discoloration. *Id.*

### 2.     Dr. Peter Biale, M.D. - Internal Medicine Consultative Examination

On August 30, 2001, Dr. Peter Biale conducted a consultative examination of Claimant regarding the work injury to his right foot and his medical condition in general. R. 127-30. Dr. Biale reviewed the information sent to him by the Bureau of Disability Determination Services and met with Claimant for 40 minutes. R. 127. Dr. Biale gave the following assessment of Claimant's seven medical claims: 1) no evidence that there was cause for Claimant's allegedly painful feet and ankles; 2) no evidence that there was cause for Claimant's allegedly painful knees; 3) Claimant's headaches can be treated by over-the-

counter medications; 4) although Claimant claims to have peptic ulcer disease, he has only treated it with over-the-counter medications and there was no evidence of rectal bleeding; 5) for his alcoholism, Claimant reports that he stopped drinking in March of 2001; 6) for his drug use, Claimant reports that he has not used heroin and cocaine for eight years; and 7) for his depression, he is supposed to take antidepressants and antipsychotic medications but he stopped taking these, allegedly because of their side effects.  R. 129-30.

### 3.    Dr. Stanley A. Burris, M.D.  - State Agency Examining Physician

On September 17, 2001, a state agency examining physician, reviewed Claimant's records and determined that he had no significant physical limitations.  R. 134-41.

### 4.    Hines VA Hospital - February  - May 2002

On February 28, 2002, Claimant was treated at Hines for the flu and a worsening rectal abscess.  R. 191.  Claimant returned to the hospital on three more occasions after this initial visit during which he was treated for the above problems, lower back and abdominal pain, and continuing treatment for his PTSD.  R. 185-191.

## E.    THE ALJ'S DECISION - NOVEMBER 6, 2002

After conducting the hearing and reviewing the evidence, the ALJ found that Claimant was not disabled within the meaning of the Social Security Act.  R. 18.  Although he determined that Claimant had severe conditions, R. 19, and that he could not do any past relevant work, R. 22, the ALJ determined that there are a significant number of jobs within the economy which Claimant could perform.  R. 23.

The ALJ assessed Claimant's application for DIB under the five step sequential analysis. *See infra,* Part II.B (describing the disability standard of review). Under step one of the disability analysis, the ALJ found that Claimant did not engage in any substantial gainful activity since his alleged onset date. R. 19. Although he worked three days a week for a temporary service from before February 14, 2001 to November 2001, "his earnings did not represent performance of substantial gainful activity." *Id.* Therefore, the ALJ moved to step two of the analysis.

Under the second step, the ALJ discussed whether Claimant's impairments were severe. He determined that the Claimant's depressive disorder and dependent personality disorder were severe impairments, but Claimant's claims of headaches, foot pain, knee pain, peptic ulcer disease, and hypertension were not severe impairments. R. 19-20.

At step three, the ALJ determined that Claimant's severe impairments did not "meet or equal" a listed impairment under the Social Security regulations. R. 20.

At step four, the ALJ determined Claimant's residual functional capacity. The ALJ first noted that Claimant had a long history of mental impairments, including alcohol and substance abuse, and major depression. The ALJ then considered that Claimant was treated frequently at Hines Hospital, and that on one occasion "the claimant was not willing to commit to the suggested treatment and left the hospital against medical advice." R. 20. The ALJ next considered the findings of Dr. Hilger and observed that Dr. Hilger did not believe Claimant to be seriously mentally or physically impaired and that his "diagnostic impressions were alcohol dependence in only partial remission and possibly ongoing, possible mild

posttraumatic stress disorder history of polysubstance abuse reportedly in remission (heroin and cocaine) and nicotine dependence, ongoing." R. 20. Last, the ALJ considered Claimant's testimony at the hearing. He noted that Claimant stated that he has problems concentrating, has hallucinations, and thinks that people are trying to kill him. However, the ALJ ultimately did not consider Claimant's testimony credible. R. 20-21.[2] The ALJ concluded: "The evidence shows that the claimant's mental impairments result in mild restrictions of activities of a daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace." R. 21. He therefore found Claimant's residual functional capacity to be a full range of work with eight defined limitations.[3]

Under the step five analysis, the ALJ determined that based upon his residual functional capacity, the Claimant would not be able to perform any of his past relevant work. R. 22. However, based upon the VE's testimony, the ALJ concluded that there are a significant number of jobs in the national economy that an individual with Claimant's residual functional capacity can perform. R. 22. Therefore, the ALJ concluded that Claimant is not disabled within the meaning of the Social Security Act. *Id.*

---

[2] Regarding the Claimant's credibility, the ALJ said: "The fact that the claimant does not have objective medical findings consistent with the alleged symptoms, that he has received only conservative treatment, the absence of any opinion by a treating or examining physician fully supporting his alleged limitations, the lack of corroborating statements given by any disinterested third parties, and especially his described part time job and his other activities convince the undersigned that he does not experience subjective symptoms which credibly prevent him from doing the work set out in the residual functional capacity finding below."

[3] R. 21, 114-15; *see* Part I.B.2 (specifically listing these limitations).

## II. LEGAL STANDARDS

### A. STANDARD OF REVIEW

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A decision by an administrative law judge, ("ALJ"), becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Wolfe v. Shalala,* 997 F.2d 321, 322 (7th Cir. 1993). Under such circumstances, the decision reviewed by the district court is the decision of the ALJ. *Eads v. Sec'y of the Dep't of Health & Human Servs.*, 983 F.2d 815, 816 (7th Cir. 1993). Judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching his decision and whether there is substantial evidence in the record to support the findings. *Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). A mere scintilla of evidence is not enough. *Diaz v. Chater,* 55 F.3d 300, 306 (7th Cir. 1995). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

While a reviewing court must conduct a "critical review" of the evidence before affirming the Commissioner's decision, *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000),

it may not re-evaluate the facts, re-weigh the evidence, or substitute its own judgment for that of the Social Security Administration. *Diaz,* 55 F.3d at 305-06. Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching a decision and whether there is substantial evidence to support the findings. *Scivally v. Sullivan,* 966 F.2d 1070, 1075 (7th Cir. 1991)**.** The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

**B.     DISABILITY STANDARD**

Disability insurance benefits, ("DIB"), are available to claimants who can establish "disability" under the terms of Title II of the Social Security Act, ("Title II"). *Brewer v. Charter*, 103 F.3d 1384, 1390 (7th Cir. 1997). Supplemental Security Income benefits, ("SSI"), are available to "disabled indigent persons" under Title XVI of the Social Security Act, ("Title XVI"). *Barnhart v. Thomas,* 540 U.S. 20, 24 (2003). Titles II and XVI of the Social Security Act employ the same definition of "disability." *Id.* That is, an individual is disabled if that individual has the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). However, a disabled individual is eligible for DIB and SSI only if that individual is under a disability. 42 U.S.C. §§ 423(a); 1382c(a). An individual is under a disability if he is unable to do his previous work and cannot, considering his age, education,

and work experience, partake in any gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To make this determination, the Commissioner must employ a five step sequential analysis. 20 C.F.R. §§ 404.1520(a)-(f); 416.920(a)-(f). If the ALJ finds at any step of this process that a claimant is not disabled, the inquiry ends. *Ismahel v. Barnhart,* 212 F. Supp. 2d 865, 872 (N.D. Ill. 2002). The process is sequential; if the ALJ finds that the claimant is not disabled at any step in the process, the analysis ends. Under this process, the ALJ must inquire: (1) whether the claimant is still working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) if the claimant does not suffer from a listed impairment, whether he can perform past relevant work; and (5) whether the claimant is capable of performing any work in the national economy. *Id.*

## III. DISCUSSION

Claimant raises three issues for review: (1) whether the ALJ failed to consider substantial medical evidence; (2) whether the ALJ's mental residual functional capacity assessment is supported by substantial evidence; and (3) whether the ALJ properly found the Claimant was not credible.

## A. THE ALJ DID NOT FAIL TO CONSIDER SUBSTANTIAL MEDICAL EVIDENCE

Plaintiff first argues that the ALJ failed to consider the bulk of the Hines Hospital medical records describing Claimant's psychoses and other physical ailments he had been treated for from 1994 to the present. Pl. Mot. 8. Specifically, Plaintiff argues that the ALJ

never discussed information in the Hines Hospital records regarding substance abuse, PTSD, major depression with psychotic symptoms, and an impulse control disorder. Plaintiff argues that instead of relying on all of the evidence, including the Hines Hospital medical records, the ALJ relied only on the report by Dr. Hilger; by doing this, the ALJ erred by ignoring an entire line of medical evidence. *Id.* at 8-9.[4]

Defendant responds that the Hines Hospital records are not nearly as substantial as the Plaintiff suggests. Def. Resp. 5. Moreover, the ALJ does rely upon the Hines Hospital records; indeed, he references a number of Hines Hospital records in the decision. R. 20 referring to Exs. 8F - 13F, R. 166 - 231.

Although an ALJ need not discuss every piece of evidence in a claimant's record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). This is necessary so that a reviewing court can tell whether the ALJ's decision rests upon substantial evidence. *Golembiewski*, 55 F.3d at 307. However, the ALJ must only minimally articulate his assessment of this line of evidence. *Stephens v. Heckler*, 766 F.2d

---

[4] Plaintiff also argues the ALJ did not follow 20 CFR § 404. 1520 (a), which details the "special technique" an ALJ must follow to determine a claimant's mental RFC. *Id.* at 9-10. In order to comply with the special technique, the ALJ must rate a claimant's degree of functional limitation in four areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace; 4) episodes of decompensation. However, the ALJ applied it when he said: "The evidence thus shows that the claimant's mental impairments result in mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and one or two episodes of deterioration." R. 21.

284, 287 (7th Cir. 1985).  After all, "[i]f a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough."  *Id.*

In this case, the ALJ decision does discuss the Hines Hospital records.  First, he alludes to Hines Hospital records when he concludes: "The medical evidence indicates that the claimant has a depressive disorder and a dependant personality disorder, impairments which are severe within the meaning of the Regulations."  R. 19.  In 1999, Claimant was diagnosed at Hines Hospital with a dependant personality disorder; this diagnosis was not made by any of the other reviewing doctors.  R. 170.  The ALJ also noted that "[C]laimant has a long history of mental impairments, notably alcohol and substance abuse...."  R. 20.  The ALJ clearly refers to the Hines Hospital records here as they are the only records to predate Claimant's application for DIB.  The ALJ goes on to discuss how Claimant was treated at Hines Hospital in 2001 and diagnosed with alcohol dependence and borderline personality.  The ALJ discussed how Claimant initially refused treatment for alcoholism and then returned to the hospital a few days later to undergo treatment.  R. 20.

At oral argument, Claimant's counsel raised for the first time the issue of whether the ALJ properly considered Claimant's medications.  This argument was waived, however, there was no objective medical evidence that the drugs being taken by the Claimant were not accommodated by the ALJ in his residual functional capacity assessment or hypothetical to the vocational expert.

The ALJ's discussion of the Hines Hospital records is more than adequate to assure the Court that the ALJ read and considered this line of evidence. *See Golembiewski*, 55 F.3d at 307. Therefore, the Court concludes that the ALJ did not fail to consider substantial medical evidence.

Furthermore, Dr. Hilger's consultative exam and Dr. Brister's mental residual functional capacity assessment provide substantial evidence to support the ALJ's conclusions. Claimant argues that the ALJ committed legal error in relying on Dr. Hilger's report because he did not administer psychodiagnostic tests. Claimant does not challenge Dr. Hilger's credentials, and the Court declines the invitation to play doctor in order to tell Dr. Hilger how to perform his psychological evaluation of Claimant.

**B.    THE ALJ's MENTAL RESIDUAL FUNCTIONAL CAPACITY ASSESSMENT IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

Plaintiff next argues that the ALJ's RFC is not supported by the record and is instead based on the ALJ's lay assessment of Claimant's mental impairments. Pl. Mot. 10-11. Instead of properly considering what limitations result from PTSD, depression, and other psychoses, Plaintiff argues that the ALJ "played doctor" and fashioned his own lay opinion as to the impact of Claimant's various impairments. *Id.* at 11. Particularly with regard to Claimant's PTSD, the Plaintiff argues that the ALJ did not give adequate weight to the severity or the limitations of the illness. *Id.* at 11-12. Plaintiff argues that none of the Hines Hospital physicians classified Claimants PTSD as "mild" and therefore the reports from these doctors directly conflict with the ALJ's mental RFC; the ALJ is required to explain this discrepancy.

The Defendant responds that even if the ALJ erred in not finding the PTSD a severe impairment, it would be harmless error because the ALJ only needs to find one severe impairment in order to fulfill the step two requirements. So long as the ALJ continued to consider the PTSD in the rest of his analysis, it does not matter whether or not he categorized it in step two as "severe". Defendant argues that the ALJ did consider the effects of PTSD in his RFC; for example, after Claimant testified at the hearing that he experienced his flashbacks in the afternoons, R. 258, the ALJ accommodated this allegation by limiting him to night shift work. R. 21.

A reviewing court "is not allowed to substitute its judgment for the ALJ's by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *White v. Barnhart*, 415 F.3d 654, 659 (7th Cir. 2005) (quoting *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)). Thus an ALJ's RFC fiding which has *some* foundation in the evidence can be "adequate" and a reviewing court should not substitute its own judgment. *See White,* 415 F.3d at 659 ("It bears noting that White does not contend that the ALJ's conclusion about White's functional capacity had *no* foundation in the medical evidence, only that it had no *credible* foundation in the evidence. This is a tough argument to make on a Social Security appeal because the reviewing court 'is not allowed to substitute its judgment....").

Here, the ALJ's RFC was supported by substantial evidence. The ALJ properly relied upon reviewing psychologist Dr. Brister's uncontradicted opinion that Claimant could perform simple, routine tasks with adequate persistence and pace; with brief, superficial, and

infrequent social contacts; and an ability to adapt to routine. R. 150. The ALJ added to this Claimant's allegations that he had flashbacks mostly in the afternoon, by limiting him to night-time work. R. 258, 114. The ALJ further considered Claimant's fear of gangs, by limiting him to work that was secure from people walking in from the street. R. 247 - 251, 115. The ALJ was entitled to rely upon Dr. Brister's uncontradicted opinion and to supplement it with Claimant's allegations. *Rice v.Barnhart,* 384 F.3d 363, 370 (7th Cir. 2004).

## C.     THE ALJ PROPERLY FOUND THAT CLAIMANT WAS NOT CREDIBLE

Last, Claimant argues that the ALJ's credibility finding was not proper. He argues that the ALJ's determination that Claimant has a depressive disorder and dependent personality disorder which are severe within the meaning of the regulations, is inconsistent with his finding that "[C]laimant does not have objective medical findings consistent with the alleged symptoms". R. 21. Plaintiff argues that because Claimant established that he had these disorders, the ALJ was required to consider his reasonable subjective complaints. If the ALJ had considered Claimant's testimony regarding his flashbacks and subsequent depressive episodes and incorporated them into the hypothetical, the VE would have concluded that there were no jobs that such an individual could sustain.

Again, a reviewing court "is not allowed to substitute its judgment for the ALJ's by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *White,* 415 F.3d at 659. In this case, the objective medical evidence supports the ALJ's finding that Claimant was not credible. First, the Hines Hospital

records, as much as Plaintiff makes of them, often only report what the Claimant himself told

doctors.  The ALJ could have concluded that this self-reporting was not an objective measure

with which to discover the severity of the Claimant's symptoms.  Second, despite Claimant's

testimony that he suffers from oftentimes debilitating symptoms, Dr. Hilger, after examining

Claimant, determined that Claimant "did not appear...to be seriously mentally or physically

impaired."  R. 146.  Third, although Claimant testified at the hearing that he takes several

medications to treat his disorders, including Prozac, Busprone, and Risperdal, he told Dr.

Hilger in August of 2001 that he was not taking his medications and yet was able to sustain

a part time job.  R. 251, 143.  Claimant acknowledged that he would have been working full-

time if he had been offered the hours.  R. 254.  Based merely upon these three examples of

objective evidence, this Court concludes that the ALJ did not err in making his credibility

determination.

## IV. CONCLUSION

Claimant originally sought disability benefits arising out of a physical ailment related to his right foot and leg. He later switched gears to claim a mental impairment. The ALJ found no disability. There is substantial evidence in the record to support the ALJ's determination. **For the reasons set forth in this opinion, Plaintiff's Motion for Summary Judgment or Remand is DENIED and the Commissioner's Motion for Summary Judgment is GRANTED.**

**SO ORDERED THIS 21st DAY OF SEPTEMBER, 2005.**

_Morton Denlow_

**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**


**Copies Mailed To:**

Frederick J. Daley, Jr.
Marcie E. Goldbloom
Daley, De Bofsky & Bryant
1 North LaSalle St., Suite 3800
Chicago, Illinois 60602

**Counsel for Plaintiff**

Charles R. Goldstein
Special Assistant United States Attorney
200 West Adams Street, 30th Floor
Chicago, Illinois 60606

**Counsel for Defendant**